CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
8033 Linda Vista Road Suite 200
San Diego CA 92111
(858) 375-7385; (888) 422-5191 fax
dennisp@potterhandy.com

Attorneys for Plaintiff CHRIS LANGER

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**Chris Langer**,

   Plaintiff,

  v.

**Westco Investment LLC**, a California Limited Liability Company; **Farsi Import, LLC**, a California Limited Liability Company; and Does 1-10,

   Defendants.

**Case:** 2:19-CV-02439-SVW-SK

**Memorandum of Points and Authorities in Support of Motion for An Award of Attorney's Fees**

Date:  January 13, 2019
Time:  1:30 p.m.
Ctrm:  10A (10ᵗʰ Floor)

Hon Judge Stephen V. Wilson

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT .................................................................... 1

II.   REASONABLENESS OF FEES ................................................................. 1

    A.    Hourly Rates .................................................................................... 2

    B.    Hours Reasonably Expended ......................................................... 15

III.  HENSLEY/KERR FACTORS .................................................................. 17

    A.    Time and Labor Required ............................................................. 18

    B.    Novelty and Difficulty of Issues .................................................. 18

    C.    Skill Required to Perform Legal Service ...................................... 18

    D.    Preclusion of Other Work ............................................................ 19

    E.    Customary Fee ............................................................................. 20

    F.    Fixed or Contingent Fee .............................................................. 20

    G.    Time Limitations .......................................................................... 20

    H.    Amount Involved and Results Obtained ....................................... 20

    I.    Experience and Ability of Attorneys ............................................ 21

    J.    Undesirability of the Case ............................................................ 21

    K.    Nature and Length of Professional Relationship with Client ................. 21

    L.    Awards in Similar Cases .............................................................. 22

IV.   LITIGATION COSTS .............................................................................. 22

V.    CONCLUSION ......................................................................................... 23

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Arroyo v. Firestone* (C.D Ca, 2012) CV 10-03795 DDP (JCGx) ................................ 5

4

*Arroyo v. Svela* (C.D Ca, August 13, 2012) 2:10-cv-07814 ......................................... 5

5

*Bell v. Clackamas County* (2003) 341 F.3d 858 ........................................................ 6

6

*Blackwell v. Foley*,

7

    724 F. Supp. 2d 1068 (N.D. Cal. 2010) ........................................................ 2, 4, 10

8

*Boemio v. Love's Restaurant*,

9

    954 F.Supp. 204 (S.D. Cal. 1997) .................................................................... 22

10

*City of Sacramento v. Drew*,

11

    207 Cal. App. 3d 1287 (1989) ............................................................................ 2

12

*Copeland v. Marshall*,

13

    641 F.2d 880 (1980) .......................................................................................... 17

14

*Dine v. Metropolitan Life Ins. Co.* (C.D. Cal., Dec. 9, 2011, No. CV 05-3773 RSWL

15

    PLAX) 2011 WL 6131312 ................................................................................ 8

16

*Elguezabal v. Hwang* (C.D Ca, October 1, 2015) EDCV 14-407 JGB (DTBx) .......... 5

17

*Flores v. City of San Gabriel* (C.D. Cal., Feb. 22, 2019, No. CV124884JGBJCGX)

18

    2019 WL 1771795 .............................................................................................. 8

19

*Grant & Eisenhofer, P.A. v. Brown* (C.D. Cal., May 14, 2018, No.

20

    CV175968PSGAFMX) 2018 WL 4945303 ................................................... 8, 16

21

*Hansen v. Deercreek Plaza, LLC*,

22

    420 F.Supp.2d 1346 (S.D.Fla 2006) ................................................................ 3, 4

23

*Hensley v. Eckerhart*,

24

    461 U.S. 424 (1983) ................................................................................... passim

25

*Hicks v. Toys "R" Us-Delaware, Inc.* (C.D. Cal., Sept. 2, 2014, No. CV13-1302-DSF

26

    JCGX) 2014 WL 4670896 ................................................................................ 11

27

*Jankey v. Poop Deck*,

28

    537 F.3d 1122 (9th Cir. 2008) ............................................................................. 1

*Koire v. Metro Car Wash,*

    40 Cal.3d 24 (1985) ................................................................ 21, 22

*Langer v. Chequered Flag International* (C.D Ca, 2016) CV 15-04960-BRO ........... 5

*Lindsay v. Grupo Glemka,* 2:18-CV-05136-MRW (July 19, 2019, C.D Ca.) ............. 7

*Lindy Bros. Builders, Inc. of Phila. v. American Radiator,*

    487 F.2d 161 (3rd Cir 1973) ................................................... 17

*Lipschultz v. Good Knight Inn* (C.D Ca, February 27, 2013) 2:11-cv-07913-DSF-JC 5

*Love v. Guerrero* (C.D Ca, 2015) CV13-1655 DMG (SPx) ........................................ 5

*Lovell v. Chandler*

    (9th Cir. 2002) 303 F.3d 1039.................................................... 24

*Margolin v. Regional Planning Comm'n,*

    134 Cal.App.3d 999 (1982).......................................................... 3

*Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106 ....................... 7, 13, 23

*PLCM Group, Inc. v. Drexler,*

    22 Cal.4th 1084 (2000) ................................................................ 3

*Rodriguez v. Barrita, Inc.* (2014) 53 F.Supp.3d 1268 ................................................ 5

*San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino,*

    155 Cal.App.3d 738 (1984).................................................... 2, 11

*Scherer v. Woodley-Vanomen Properties* (2019) 2:18-cv-08239-GW-AFM ........... 16

*Serrano v. Priest,*

    20 Cal.3d 25 (1977) ................................................................ 17

*United Steelworkers of Am. v. Phelps Dodge Corp.,*

    896 F.2d 403 (9th Cir. 1990).................................................... 3

*Van Gerwen v. Guarantee Mutual Life,*

    214 F.3d 1041 (9th Cir. 2000).................................................. 18

*Wehr v. Burroughs Corp.,*

    477 F.Supp. 1012 (E.D.Pa. 1979) ............................................. 2

iii

*Welch v. Metropolitan Life Ins. Co.*,

   480 F.3d 942 (9th Cir. 2007) ..................................................................... 3

*Woodland Hills Residents Ass'n., Inc. v. City Council*,

   23 Cal.3d 917 (1979) ............................................................................. 2, 11

*Zielke v. Rosenstiel* (C.D. Cal., Mar. 25, 2019, No. CV 19-702 PSG (EMX)) 2019

   WL 1718681 ............................................................................................ 11

## Statutes

42 U.S.C. § 12205 ................................................................................... 1, 13

Cal. Civ. § 52(a) .................................................................................... 1, 12

## I.   PRELIMINARY STATEMENT

Mr. Chris Langer is a person with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility.  He sued defendants Westco Investment LLC, and Farsi Import, LLC as owners and operators of the Farsi Café located at 1916 Westwood Blvd., Los Angeles, California for failure to provide accessible parking, accessible paths of travel, accessible transaction counter, and accessible restroom although the law has required it for 26 years. After fully litigating this matter, Mr. Langer prevailed at trial and this Court issued a judgment in his favor, granting Mr. Langer statutory damages and remedial relief. Having prevailed, Plaintiff now moves the Court for an award of attorney's fees and costs.

## II.   REASONABLENESS OF FEES

Under the American with Disabilities Act, attorney's fees are available to a prevailing party. 42 U.S.C. § 12205. Additionally, under the Unruh Civil Rights Act, a defendant "is liable for" any attorney fees" suffered by any person denied the rights" provided for under Unruh. Cal. Civ. § 52(a). Successful litigants are entitled to reasonable attorney fees "to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Consequently, recovery is the rule rather than the exception." *Jankey v. Poop Deck* (9th Cir. 2008) 537 F.3d 1122, 1131 (internal citations omitted).

This is a civil right entitlement, not a windfall. "It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for

1  expenses actually incurred in vindicating a public right." *City of Sacramento v.*
2  *Drew* (1989)207 Cal. App. 3d 1287, 1304

3      The "fundamental objective" of attorney fee statutes is "to encourage
4  suits effectuating a strong policy by awarding **substantial attorney's fees** ...
5  to those who successfully bring such suits . . .." *Woodland Hills Residents*
6  *Ass'n., Inc. v. City Council*, 23 Cal.3d 917, 933 (1979) (emphasis added). To
7  accomplish this, the award must be large enough "to entice competent counsel
8  to undertake difficult public interest cases." *San Bernardino Valley Audubon*
9  *Society, Inc. v. County of San Bernardino* (1984) 155 Cal.App.3d 738, 755.
10  Thus, there is a "requirement of an award of substantial attorney fees" in these
11  disability access civil rights cases. *Blackwell v. Foley* (N.D. Cal. 2010) 724 F.
12  Supp. 2d 1068, 1076 (a disability access case involving both the ADA and
13  Unruh Civil Rights Act).

14      The documentation submitted in support of a request for attorney fees
15  should be sufficient to satisfy the court, or indeed a client, that the hours
16  expended were actual, non-duplicative and reasonable and to appraise the
17  court of the nature of the activity and the claim on which the hours were spent.
18  *See Hensley*, 461 U.S. at 437; *Wehr v. Burroughs Corp.* (E.D.Pa. 1979) 477
19  F.Supp. 1012, 1016–18, *modified on other grounds* at *Wehr v. Burroughs*
20  *Corp.* (3rd Cir. 1980) 619 F.2d 276. The billing statements attached as exhibit
21  2 meet this standard.

22
23   **A.     Hourly Rates**
24      A reasonable hourly rate reflects the skill and experience of the lawyer,
25  including any relevant areas of particular expertise, and the nature of the work
26  performed. *See Hensley*, 461 U.S. at 433-34. The reasonable market value of
27  the attorney's services is the measure of a reasonable hourly rate. *PLCM*
28  *Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1094 (2000). This standard applies

1  regardless of whether the attorneys claiming fees charge nothing for their
2  services, charge at below-market or discounted rates, represented the client on
3  a straight contingent fee basis, or are in house counsel. *Id.*; *see also Welch v.*
4  *Metropolitan Life Ins. Co.* (9th Cir. 2007) 480 F.3d 942, 946. As evidenced by
5  the detailed background of each attorney, the attorneys in this matter are
6  skilled in their practice and qualified to command rates between $400-$595
7  per hour. (Exhibit 1 - Potter Decl.  ¶ 9-19 and Exhibit 9 – O'Connor
8  Declaration).

9      Rates awarded to the claiming attorneys in previous actions are good
10  evidence of the appropriate market rate. *See e.g. Margolin v. Regional*
11  *Planning Comm'n* (1982) 134 Cal.App.3d 999, 1005   (where the court
12  rejected defendants' argument that rates awarded plaintiff's counsel in prior
13  litigation were not relevant, stating that court awards are "obviously relevant"
14  and that the "most analogous evidence" would be fees sought and deemed
15  reasonable by courts in other cases."). Also, in *United Steelworkers of Am. v.*
16  *Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990), the court held, "rate
17  determinations in other cases, particularly those setting a rate for the plaintiffs'
18  attorney, are satisfactory evidence of the prevailing market rate."). In *Hansen*
19  *v. Deercreek Plaza, LLC* (S.D.Fla 2006) 420 F.Supp.2d 1346, 1350, the court
20  held that previous fee rulings for the fee applicant for comparable cases is
21  "satisfactory evidence" in an ADA case.

22      Not only are plaintiff's counsel's rates fully consistent within their
23  market but they should expect to receive full compensation. The rates
24  requested herein have been approved by this district and are in line with
25  market rates. (Exhibits 4, 5 & 6 – Judges Wilson, Kim and Wilner Orders).
26  Both state and federal law advocates for full and substantial compensation for
27  disability civil rights attorneys:

28

1
2
3
4
5
6
7
8
9
10
11

> Per statutory provisions by the United States Congress and the California Legislature to ensure that there are attorneys willing to perform the important function of securing the rights of disabled persons to "full participation in the social and economic life of the state" and to "full and equal access," it is necessary to provide substantial compensation for this work. Encouraging competent attorneys to handle ADA Title III cases is necessary for effective enforcement: former California Attorney General Dan Lungren, in a 1993 Opinion, held that California building officials could not independently enforce the ADA, and that enforcement was left primarily to private lawsuits.

12
13
14
15
16
17
18

*Blackwell v. Foley* (N.D. Cal. 2010) 724 F. Supp. 2d 1068, 1075 . "Indeed, were it not for the efforts of those attorneys willing to undertake the representation of ADA plaintiffs, there would be little, if any, enforcement of this landmark statute." *Hansen v. Deercreek Plaza, LLC* (S.D.Fla. 2006) 420 F.Supp.2d 1346, 1349.

19
20
21

Based on the evidence of market rate and the public interest in encouraging the private bar in enforcing the ADA, plaintiff's counsels' rates should be approved by this court.

22

     *1.*      *History of Prevailing Rate*

23
24
25

Courts have previously noted the increase in fee requested by counsel in this action compared to the same rates sought relatively recently. Plaintiff addresses this now.

26
27
28

Counsel for plaintiff has been practicing in the Central District for nearly 20 years. Nearly a decade ago, in March 2011, Judge Stephen Wilson considered plaintiff's counsel's qualifications, expert opinions and other

PNAs for Fee Motion                                      2:19-CV-02439-SVW-SK

1   evidence and granted plaintiff's counsels then requested rates. (Exhibit 3 –
2   2011 Judge Wilson Award).

3        This rate was quickly adopted in the Central District[1] and Courts in the
4   Central District of California have become accustomed to awarding a
5   templated rate to ADA litigation since Judge Wilson's award in *Rite Aid*.
6   However, in 2019[2], the firm began requesting a reassessment of the prevailing
7   rates in the community in light of increased litigation costs since 2011.
8   Plaintiff seeks adjusted rates in line with current approved rates for the district
9   as well as adjustment for accumulated experience. *Rodriguez v. Barrita, Inc.*
10  (2014) 53 F.Supp.3d 1268. In the *Rite Aid* case, this court acknowledged that
11  using rates from 2005 through 2009 did not properly indicate the prevailing
12  rate at the time of that ruling in 2011. Looking at that rationale today, the
13  baseline *Rite Aid* determination is even older (8 years old now) than the oldest
14  rates (6 years) that were being considered in 2011. The Ninth Circuit has
15  advised that applying rates as recently as two years prior to the work under
16  review is inappropriate for determining the current market rate. *Bell v.*
17  *Clackamas County* (2003) 341 F.3d 858, 868. A proper lodestar assessment
18  requires reference to the current prevailing rates in the community, and a rate

---

[1] *Arroyo v. Firestone* (C.D Ca, 2012) CV 10-03795 DDP (JCGx); *Arroyo v. Svela* (C.D Ca, August 13, 2012) 2:10-cv-07814; *Lipschultz v. Good Knight Inn* (C.D Ca, February 27, 2013) 2:11-cv-07913-DSF-JC; *Elguezabal v. Hwang* (C.D Ca, October 1, 2015) EDCV 14-407 JGB (DTBx); *Love v. Guerrero* (C.D Ca, 2015) CV13-1655 DMG (SPx); *Langer v. Chequered Flag International* (C.D Ca, 2016) CV 15-04960-BRO

[2] Until 2019, since the 2011 decision, Plaintiff's counsel has sought an unchanged rate, and as expected, has received that unchanged rate. Counsel obviously would not expect a judge to grant a rate higher than requested, and any firm is free to seek below market compensation without insistence otherwise. However, counsel's decisions to seek these rates should have no bearing on its ability to seek a contemporaneous judicial assessment of the prevailing rates in the community in the form of a motion for attorney's fees, as required by the lodestar process, as he has done here.

should not be rejected simply because of the magnitude of the increase requested. In fact, the *Moreno* court in fact specifically advised against this:

> District judges can certainly consider the fees awarded by other judges in the same locality in similar cases. But adopting a court-wide policy—even an informal one—of "holding the line" on fees at a certain level goes well beyond the discretion of the district court. **One problem with any such policy is that it becomes difficult to revise over time**, as economic conditions change; here the rate apparently hadn't changed for 10 years, and even a $50 increase in the hourly rate was considered a "big step ... for the court generally." Unless carefully administered and updated, any such policy becomes a strait-jacket. More fundamentally, **such a policy—no matter how well intentioned or administered—is inconsistent with the methodology for awarding fees that the Supreme Court and our court has adopted**. The district court's function is to award fees that reflect economic conditions in the district; **it is not to "hold the line" at a particular rate, or to resist a rate because it would be a "big step."** If the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate without regard to any contrary practice.

*Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, 1115. (emphasis added)

The first court to assess the same rates claimed in this matter, Judge Wilner, agreed in a contested fee motion that these rates were reasonable. *Lindsay v. Grupo Glemka,* 2:18-CV-05136-MRW (July 19, 2019, C.D Ca.) (awarding rates to present counsel between $400-$595/hr) (Exhibit 5 – Judge

Wilner Order). Not long after, in September 2019, Judge Kim followed suit, granting without modification the same rates sought here, only reducing hours for waived oral argument. (Exhibit 6 – Judge Kim Order; Exhibit 9 – Decl of John O'Connor ¶ 8 para 34.). Finally, in *Whitaker v. Hieu,* this court had the opportunity to reassess the rates that have been awarded in this district and after being provided the briefing prepared in advance for this matter, determined that the rates requested were reasonable, awarding the rates requested. (Exhibit 4 – 2019 Judge Wilson Order)[3]

      2.      *Current Prevailing Rates in the Community*

In viewing the market since that *Rite Aid* that has served as the foundation for rate awards for the last 8 years, not only have the baseline rates in the community increased since 2011, decided during a recession, but the experience of the given attorneys has also increased dramatically. The Central District of California has not struggled with providing market rate increases to law firms in the past. *Dine v. Metropolitan Life Ins. Co.* (C.D. Cal., Dec. 9, 2011, No. CV 05-3773 RSWL PLAX) 2011 WL 6131312, at *3 (tracking the increases in rates granted to two law firms, approving annual rates in excess of $50 per year over several years).

As shown below, rates have recently been awarded far in excess of those originally awarded to Center for Disability Access in 2011 and in fact above those rates requested in the present motion.

| Case[4] | Attorney | Exp. | Rate |
| --- | --- | --- | --- |

---

[3] With one exception, the rates requested for Mr. Price. Which will be addressed below.

[4] *Flores v. City of San Gabriel* (C.D. Cal., Feb. 22, 2019, No. CV124884JGBJCGX) 2019 WL 1771795, at *2; *Grant & Eisenhofer, P.A. v. Brown* (C.D. Cal., May 14, 2018, No. CV175968PSGAFMX) 2018 WL 4945303, at *2; *Keaton v. LAUSD* (Cal. Superior Ct, March 19, 2019, No.

| | | | |
|---|---|---|---|
| *Flores v. City of San Gabriel* | M. Morguess | 21 | $500 |
| *Flores v. City of San Gabriel* | B. Harper | 9 | $400 |
| *Keaton v. LAUSD* | J. Adams | 10 | $600 |
| *Keaton v. LAUSD* | K. Ireland | 1.5 | $370 |
| *Woods v. Fagan* | B. Dunn | 20 | $750 |
| *Woods v. Fagan* | J. Fattahi | 10 | $550 |
| *Woods v. Fagan* | M. Gyongyos | 3 | $375 |
| *Grant & Eisenhofer v. Brown* | S. Josephs | 6 | $600 |
| *Grant & Eisenhofer v. Brown* | "Associates" | N/A | $500 |

As demonstrated above, the rates requested by, and previously awarded to, counsel in this matter are within the ranges being awarded by courts in this community for civil rights litigation.

### 3.	Relevant Cohort

There has been a tendency amongst the defense bar to be dismissive of "ADA litigation," viewing it as a lesser area of law, or a nuisance. Oftentimes plaintiff's counsel are presumed to be unwilling to litigate cases to trial, or generally only to be looking for quick settlements. These are all harmful falsehoods, and to the extent it is ever applicable, it is not applicable to either this case, or Plaintiff's counsel generally. The Center for Disability Access ("CDA") has been at the vanguard of ADA litigation, obtaining numerous favorable decisions that have shaped the face of disability rights litigation in California and the Ninth Circuit at large. The CDA has helped to shape ADA law with numerous, precedent setting opinions including, but not limited to the following published cases: *Lozano v., C.A. Martinez Family Ltd. Partnership*, 129 F.Supp.3d 967 (S.D. Cal. 2015); *Fortyune v. City of Lomita*,

BS165965) (exhibit 12); *Woods v. Fagan* (C.D. Cal., Sept. 21, 2016 No. 2:14-cv-08374-VAP-SP) (exhibit 8)

766 F.3d 1098 (9th Cir. 2014); *Cortez v. City of Porterville*, 5 F.Supp.3rd 1160 (E.D. Cal. 2014); *Johnson v. Wayside Prop., Inc.*, 41 F.Supp.3d 973 (E.D. Cal. 2014); *Daubert v. Lindsay Unified School District*, 760 F.3d 982 (9th Cir. 2014); *Munson v. Del Taco, Inc.*, 46 Cal.4th 66 (2009); *Nicholls v. Holiday Panay Marina, L.P.*, 93 Cal.Rptr.3d 309 (Cal. App. 4th 2009); *Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159 (S.D. Cal. 2009); *Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp. 2d 953 (C.D. Cal. 2009); *Deanda v. Sav. Inv., Inc.*, 267 F. App'x 675, 676 (9th Cir. 2008); *Miller v. California Speedway Corp.* (9th Cir. 2008) 536 F.3d 1010; *Munson v. Del Taco, Inc.*, 522 F.3d 997 (9th Cir. 2008); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126 (C.D. Cal. 2005); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002); *Wyatt v. Ralphs Grocery Co.*, 65 Fed.Appx. 589 (9th Cir. 2003); *Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000); *Wyatt v. Liljenquist*, 96 F. Supp. 2d 1062 (C.D. Cal. 2000); *Karczewski v. DCH Mission Valley LLC* (9th Cir. 2017) 862 F.3d 1006. As demonstrated here, the firm has never shied away from trying cases on their merits, and has a strong record of success both at summary judgment and at trial. As a result, there is a plethora of rulings on fee awards to draw from.

ADA litigation is civil rights litigation. The supplementing statute in California is the Unruh *Civil Rights Act*, issuing the same penalties associated with discrimination pertaining to "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status." Cal. Civ. Code § 51(e)-(f). The tendency to treat the area of law dismissively or less worthy of significant fee recovery is contrary to the directive of *Hensley* suggesting that civil rights litigation should be compensated to attract experienced and competent counsel to vindicate these rates. The reason for the

1  fee-shifting provisions of both the ADA and California law is to motivate
2  plaintiffs' attorneys to advocate for full and equal access for the disabled to
3  public accommodations like Defendant's restaurant. *Blackwell v. Foley* (N.D.
4  Cal. 2010) 724 F.Supp.2d 1068, 1076. Limiting the cohort of "the prevailing
5  market" narrowly defined as "ADA claims", as some courts have suggested,
6  has two effects. First, the CDA is the largest law firm in this field in the state
7  of California. If the only relevant cohort is Central District of California ADA
8  cases, then CDA cases are likely to be the only cases usable as a reference,
9  which stymies any ability to seek review of the rates, implicating the "holding
10  the line" concern expressed in *Moreno*. This does significant damage to the
11  ability to conduct a market analysis, when the CDA is the largest player in the
12  market.

13  Second, if rates are dismissively set as "ADA Rates" or "CDA Rates"
14  they fail to fulfill "fundamental objective"[5] to entice counsel"[6] to bring these
15  suits. If the only counsel incentivized to file ADA litigation are those already
16  in the disability rights sphere, the rates awarded are clearly failing to attract
17  more attorneys to the area of law, failing the objective of fee shifting statutes.
18  This stifles the ability to obtain representation, limits competition, and chills
19  civil rights litigation.

### 4.    *Real Rate Report*

The relevant community for this action is the Central District of
California. Central District courts have found that the Real Rate Report is "a
much better reflection of true market rates than self-reported rates in all

---

[5] *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 511, 593 P.2d 200, 208]
[6] *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino* (1984) 155 Cal.App.3d 738, 754 [202 Cal.Rptr. 423, 431]

10

1    practice areas." *Zielke v. Rosenstiel* (C.D. Cal., Mar. 25, 2019, No. CV 19-702
2    PSG (EMX)) 2019 WL 1718681, at *2; *Hicks v. Toys "R" Us-Delaware,*
3    *Inc.* (C.D. Cal., Sept. 2, 2014, No. CV13-1302-DSF JCGX) 2014 WL
4    4670896, at *1

5         A current survey report, pulled from the Real Rate Report for 2018,
6    shows that the median hourly rate for litigation partners doing work in Los
7    Angeles is $655 and litigation associates at $510. Exhibit 8 (Real Rate Report
8    pg. 14). When factoring for years of experience, the median hourly rate for
9    partners with more than 21 years of experience was $688 per hour and for
10   partners with less than 21 years of experience, it was $665 per hour. Exhibit 8
11   (Real Rate Report, pg 19). Turning to associates, the median hourly rate for
12   those with between 3 and 7 years of experience was $573 per hour. Exhibit 8
13   (Real Rate Report pg 23)

14        While the Real Rate Report does not factor for attorneys who are
15   highly specialized in a particular subject matter area, such as this case where
16   the firm specializes in a narrow area of civil rights litigation—and therefore
17   could command a higher rate—it does support the rates sought in this case,
18   without needing to look to additional modifiers that would be supported due to
19   counsels' specialization.

20
21        5.    *Rate for Dennis Price*
22        This Court has recently assessed the appropriate rates for attorneys
23   Potter, Grace, Carson and Price. (Exhibit 4 – 2019 Wilson Order). In that prior
24   ruling, the court expressed hesitation in awarding an increased rate to Denis
25   Price due to the magnitude of increase over relatively recent orders. Counsel
26   believes this was in error.
27        Mr. Price is a highly experienced attorney tasked with handling
28   advanced matters for the firm, including supervising litigation strategy,

1  training new attorneys, and handling a substantial appellate case load. Mr.

2  Price's experience in litigation in federal court, especially his appellate

3  experience puts his relevant cohort among attorneys with significantly more

4  years of experience. The Real Rate Report included as Exhibit 8 provides "pay

5  bands," and each band acknowledges that individuals may fit into a lower

6  quartile, a median, or an upper quartile. Mr. Price's experience and work

7  product is consistent with, at minimum, the median for his experience, if not

8  the upper quartile, given the rarity of attorneys with under 10 years'

9  experience having extensive successful appellate experience.

10  Looking at rates for associates, a median litigation associate would be

11  justified in seeking a $510 rate (Ex 8 - Real Rate Report p. 14). Adjusting for

12  years of experience, Mr. Price has been practicing for 8 years, nearly all in a

13  specialized area of law, the Real Rate Report notes that a rate of $573 would

14  be appropriate for a median rate for associates with 3-7 years of experience.

15  Even an associate with less than 3 years would be appropriately awarded

16  $450. (Ex. 8 – p 24)

17  The Ninth Circuit has cautioned against the "holding the line" rationale

18  that was used in *Hieu* to restrict the rate of increase restricted for Mr. Price,

19  stating that "if the lodestar leads to an hourly rate that is higher than past

20  practice, the court must award that rate without regard to any contrary

21  practice." *Moreno v. City of Sacramento* (2008) 534 F.3d 1106; 1115. The

22  reference to other rulings that have previously granted Mr. Price significantly

23  lower rates is only proper if those other rulings were based on a market rate

24  assessment. As has been established above, they were not, as the firm has

25  billed below market rates for some time, including most of the time that Mr.

26  Price has been practicing. As a result, relying on those cases in the face of

27  evidence of market rate is a violation of *Moreno*. This district has had no

28  issues with awarding rates far in excess of the *Hieu* rates suggested for Mr.

Price, including awarding a rate of $500 in *Grant v. Brown* case referenced in the table above for generic "associates" without even giving regard to the experience of those attorneys. An 8 year litigation attorney with a history of specialized focus litigation justifies a rate in excess of even the $450 sought in this motion.

      6.        *Other Attorneys Not Previously Considered by this Court*

Plaintiff seeks compensation for attorneys not previously considered by this court in the *Hieu* decision: Russell Handy, Sara Gunderson, Jen McAllister, Chris Seabock, Ray Ballister and Bradley Smith.

Mr. Handy's work is well known to this court. Attorney Russell Handy is qualified to bill at the same $595 per hour awarded to Mark Potter previously. He is a named partner at the firm with a long history of successful litigation. He graduated Magna Cum Laude from California Western, has taught as an adjunct professor, has clerked for the Ninth Circuit Court of Appeals, and has devoted his private practice to disability litigation for the last 19 years. He has prosecuted over a thousand ADA cases, has prosecuted over 40 ADA trials and appeared at either state or federal appellate court forums on ADA cases over 30 times. He has argued disability cases before the California Supreme Court and was awarded the California Magazine's Attorney of the Year (CLAY) award for 2010 for his disability work that resulted in a significant ruling for disability litigants under the Unruh Civil Rights Act. (See Munson v. Del Taco, Inc. (2009) 46 Cal.4th 66). He has appeared on ABC's show 20/20 as an expert in ADA litigation. In 2011, the San Diego Daily Transcript named him one of San Diego's "Top Attorneys 2011."

Mr. Ballister is a seasoned trial attorney with 29 years of experience. He has prosecuted over a thousand disability access cases, taking and defending hundreds of depositions, attending thousands of hearings, has an extensive

trial record. For more than a decade, Mr. Ballister has focused exclusively on disability access cases. He is qualified to bill at $550 per hour, consistent with the same rate that was awarded to Ms. Grace in *Hieu.*

Chris Seabock has a history of successful trial experience both in ADA work as well as working as a district attorneys. He heads the trial department at the firm and prepared the trial documents in this matter that ultimately lead to the success on the merits. He graduated cum laude from California Western School of Law in 2011, where he focused on oral advocacy, competing in three national mock trial competition and serving as President of the Moot Court Honors Board. Mr. Seabock also interned twice with the Ventura County District Attorney's Office and spent a semester interning for Magistrate Judge Peter C. Lewis in the Southern District of California. Mr. Seabock joined Potter Handy in 2012 and litigated hundreds of disability access cases over the next three years, ultimately being assigned to conduct trials and being tasked with preparing every case the firm brought to trial. In 2015, Mr. Seabock became a Deputy District Attorney in Butte County, where he quickly advanced to prosecuting felonies and tried approximately a dozen cases, including cases for first degree burglary, maintaining a methamphetamine lab, and indecent exposure. In 2019, Mr. Seabock returned to Potter Handy and quickly picked up where he left off preparing matured cases for trial. Mr. Seabock is qualified to bill at $450 per hour, consistent with the rate awarded to Chris Carson in *Hieu* and the prevailing rates in the community evaluating work of similar experience and skill.

Attorneys McAllister, Smith and Gunderson are billing at a lower rate of $400.[7] These attorneys specialize in discovery matters, and Ms. Gunderson focuses efforts in preparing matters to prevail on motions for summary judgment.

---

[7] These attorneys' resumes are detailed in Exhibit 1 ¶ 17-19.

Ms. Gunderson has obtained numerous victories against top defense firms representing entities from grocery stores to fast food chains and varying levels of complexity. Despite her litigation experience, counsel only seeks $400 per hour for her work.

Mr. Smith and Ms. McAllister have similar experience and job descriptions. Their requested rate was previously awarded to Ms. McAllister for substantially similar discovery work on a Rule 37 motion that resulted in terminating sanctions. *Scherer v. Woodley-Vanomen Properties* (2019) 2:18-cv-08239-GW-AFM (Docket 43). $400 is a reasonable baseline rate for attorneys working in the Central District of California. As demonstrated above, a rate of $500 has been awarded in *Grant* for "Associates" without even assessing their experience or qualifications. *Grant & Eisenhofer, P.A. v. Brown* (C.D. Cal., May 14, 2018, No. CV175968PSGAFMX) 2018 WL 4945303, at *2. Plaintiff's firm obtains consistently positive results for its clients utilizing a unique distribution of tasks that enables use of junior associate work for complicated tasks through specialization as detailed in Mark Potter's declaration. (Exhibit 1 - ¶ 8-9). Despite this, Center for Disability Access seeks only a $400 rate for junior associates.

## B.    Hours Reasonably Expended

As the first step in the calculation of an equitable award, the Court should determine the number of hours reasonably expended in this litigation: The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorneys, must be a calculation of the attorneys' services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only approach that can claim objectivity, a claim which is 'obviously vital' to the prestige of the bar

and the courts." *Serrano v. Priest* (1977) 20 Cal.3d 25, 49 *citing Lindy Bros. Builders, Inc. of Phila. v. American Radiator* (3rd Cir 1973). 487 F.2d 161.

Furthermore, only hours found to have been reasonably expended may be allowed. Plaintiff is not entitled to an award of attorney's fees for hours which were duplicative, unproductive, excessive or otherwise unnecessary. *Hensley*, 461 U.S. at 434. A fee applicant must exercise "billing judgment" in the preparation of the attorney's fee application; '[h]ours not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority". *Copeland v. Marshall* (1980)  641 F.2d 880, 891 (en banc) (emphasis in original), *quoted* in *Hensley*, 461 U.S. at 484. A fair award is the product of reasonable hours and reasonable rates and represents an objective basis for an initial determination of attorney's fees.

Plaintiff's firm has created an innovative staffing approach in which each attorney is assigned discrete tasks and able to become experienced in narrow aspects of litigation in a short period of time. Ex. 1 - Decl. of Mark Potter ¶ 7. While the overall number of attorneys that play a role in the development of one of our ADA cases might be higher than that seen in other firms, the total hours spent in litigation, and the total costs, are lower than other staffing strategies. *Id.* ¶ 8. Each attorney's is able to focus on a particular task at a gain of both efficiency and effectiveness as a result of that specialization. *Id.* To the extent any duplication of efforts occurs as a result of this staffing method, counsel has exercised billing judgment and those billing entries have not been included in the amount sought for compensation, as anticipated by *Hensley. Id.* ¶ 9. At no time is an attorney billed for reviewing the work of another, or familiarizing themselves with a file. *Id.*

This matter was fully litigated through trial. Hence, the case reasonably and necessarily involved pre-filing investigation, complaint drafting, emails, letters, phone conversations, court filings, a motion for summary judgment,

1    trial preparation and trial attendance, this motion and the other trappings of a
2    litigated case in which a Plaintiff prevails.

3          Plaintiff's attorneys have expended more than 50 hours to date and
4    estimate another 8 hours for dealing with an opposition brief, drafting the
5    reply, and attendance at oral argument. As is clear from the billing statement
6    (exhibit 2), there has been no overbilling in this case and Plaintiff has
7    attempted to specialize all hours spent to reduce the total number of hours
8    involved in the matter.

9          All of the hours submitted to the court in the accompanying declaration
10   of Mark Potter and the attached billing were reasonably incurred in the
11   prosecution of this case. Each discrete task should be viewed with reference to
12   the amount of time spent doing it and assessing if that task was reasonably
13   incurred and if that task was accomplished in a reasonable amount of time.

14

15                      **III.   HENSLEY/KERR FACTORS**

16         In *Hensley v. Eckerhart*, (1983) 461 U.S. 424, the Supreme Court stated
17   that the lodestar is the "presumptively reasonable fee amount" and that the
18   Court can adjust upward or downward by a multiplier in "rare" or
19   "exceptional" cases only.  *Id.* at 433; *Van Gerwen v. Guarantee Mutual Life*,
20   214 F.3d 1041, 1045 (9th Cir. 2000); *see also Welch*, 480 F.3d at 946.
21   Additionally, the *Hensley* court outlined twelve factors that a Court may
22   consider when determining the appropriate fee award or any departure from it.
23   Many of the factors are already subsumed into the lodestar discussion but
24   plaintiff will briefly discuss each factor.  Plaintiff seeks no modification of the
25   lodestar.

26

27

28

### A.     Time and Labor Required

As stated above, the plaintiff showed billing judgment and restraint. The case was not over litigated and plaintiff's counsel expended less than two full work weeks. The plaintiff seeks no multiplier as the time expended will be compensated by the lodestar.

### B.     Novelty and Difficulty of Issues

The Americans with Disabilities Act itself and its interaction with California State Law is ever evolving and involves new issues and new challenges on a constant basis. Aside from the fairly novel area of Americans with Disabilities Act work in general, this case presented no significant legal issues of first impression and plaintiff seeks no multiplier based on this issue.

### C.     Skill Required to Perform Legal Service

The Americans with Disabilities Act was passed in 1990 and the Unruh Civil Rights Act was amended in 1992 to incorporate the ADA.  There are only a handful of attorneys with expertise in the area. Access under Title III of the Americans with Disabilities Act is predicated upon requirements to provide access to existing public accommodations, new construction and alterations to existing buildings. Those requirements in existing public accommodations turn on whether the removal of architectural barriers is "readily achievable."   In turn, there is a plethora of federal regulations, Department of Justice advisory opinions, interpretive manuals and case law that is argued by both plaintiffs and defendants as to what constitutes architectural barriers and the extent of the remedial measures necessary, if any, to remove the architectural barrier. Furthermore, there is the overlaying application of Title 24 of the California Code of Regulations requirements to

public accommodations which were constructed or altered after 1982, and the American National Standards Institute (ANSI) between 1970 and 1982.

A successful prosecution of disability access cases is dependent upon a plaintiff's attorney having a thorough knowledge of the ADA and all its implementing regulations, Americans With Disabilities Act Accessibility Guidelines, Title 24 of the California Code of Regulations, ANSI standards, and the relevant sections for the California Health and Safety Code, the California Civil Code, and the California Government Code. In addition, an intimacy with the body of case law which has developed around the ADA (among which over two dozen published decisions were handled by plaintiff's counsel's office) and state statutory schemes, and the ability to couple this knowledge with a practical, strategic approach to interfacing with defendants, their own personal counsel, insurance defense attorneys, insurance carriers and the Court is absolutely essential.

In short, handling disability access cases demand the services of an attorney trained and specializing in the area of law.  This case did not present specialized or skillful challenges and was a fairly straight-forward application of the law.  No modified of the lodestar is requested.


**D.**     **Preclusion of Other Work**

Plaintiff's attorneys have spent nearly 60 hours in prosecuting this case. That time could not be used, simultaneously, for other cases or other clients. Thus, the work on this case precluded other work that could have and would have been done and billed for. Nonetheless, the lodestar fully compensates for that work.

### E.      Customary Fee

As covered above, the rates and fees charged by plaintiff's counsel are market rates.

### F.      Fixed or Contingent Fee

As is the case with virtually all civil rights cases, the fees in this case were contingent upon prevailing. Had the plaintiff not prevailed, the plaintiff's attorneys would not be able to recover monies to compensate them for the outlay of time spent in prosecuting this case.  Nonetheless, plaintiff's counsel is not seeking a multiplier.

### G.      Time Limitations

There were no unique time limitations imposed by either the client or the circumstances.

### H.      Amount Involved and Results Obtained

Under the Americans with Disabilities Act, there are no damages available. The only remedy is injunctive relief. Additionally, under his Unruh Civil Rights Act cause of action, the plaintiff was entitled to damages. Cal. Civ. § 52(a).  It's difficult to measure the "damage" caused by denial of access.  Thus, the Unruh Civil Rights Act has a minimum that a defendant must pay.   In an Unruh case before the California Supreme Court, the defendant violated the law but argued that it had "not harmed a single hair on the plaintiff's head or subjected him to the slightest deprivation or embarrassment of any kind." *Koire v. Metro Car Wash*, 40 Cal.3d 24, 33 (1985). The Court stated, "by passing the Unruh Act, the Legislature established that arbitrary sex discrimination by businesses is per se injurious. Section 51 provides that all patrons are entitled to equal treatment. Section 52 provides for minimum statutory damages of $250 [previous minimum] for

every violation of section 51, regardless of the plaintiff's actual damages." *Id.* at 33. The minimum damage award that was in effect for the plaintiff's case was $4,000. Courts just don't award that much money for violations that do not involve impact injury. For example, in one of the only published decision to actually identify a damage award: *Boemio v. Love's Restaurant*, 954 F.Supp. 204 (S.D. Cal. 1997), the court held a bench trial, found for the plaintiff, and awarded $1,000 (the minimum) although the plaintiff had to urinate in the parking lot. This case was no different from other access denial cases with respect to damages. It simply never involved large sums of money. The $4,000 damage award and the remedial relief obtained during the case, means that the plaintiff easily qualifies as a prevailing party entitled to his attorney's fees and costs.

## I.     Experience and Ability of Attorneys

See discussion under "Hourly Rates" above.

## J.     Undesirability of the Case

This case, like many small dollar civil rights cases, is low on the desirability scale.  The clientele is largely (as in the present case) very low income or indigent. Payment is completely dependent upon winning. It is usually big business and insurance companies on the other side.

## K.     Nature and Length of Professional Relationship with Client

The Center for Disability Access has no relationship with Mr. Langer other than representing him in his ADA/Unruh claims.

**L.      Awards in Similar Cases.**

As discussed above, Plaintiff suggests the court should only look at similar cases in which *similar rates* were sought. Focusing on cases where lower rates were awarded due to counsel *seeking* lower rates would violate the "holding the line" framework discussed in *Moreno v. City of Sacramento* (2008) 534 F.3d 1106, 1115.)

## IV.   LITIGATION COSTS

The plaintiff seeks $11,403.15 in costs. The plaintiff includes traditional costs such as the service cost ($60) and the filing fee ($400) as well as the litigation expenses that includes one investigation ($200). Plaintiff retained two experts in this matter, one to conduct a site inspection and testify at trial ($6,099.65), and a second for this present motion. ($4,643.50). Section 505 of the Americans with Disabilities Act (42 U.S.C. § 12205) authorizes reasonable attorney's fees, including "litigation expenses and costs," in any action brought under the Act. This includes all costs normally associated with litigation including investigative costs:

> According to committee reports, Congress included the term "litigation expenses" in order to authorize a court to shift costs such as expert witness fees, travel expenses, and the preparation of exhibits. See H.R. Rpt. No. 101-485(III) at 73, reprinted in 1990 U.S.C.C.A.N. 445, 496 (Report of the Committee on the Judiciary) ("Litigation expenses include the costs of expert witnesses. This provision explicitly incorporates the phrase 'including litigation expenses' to respond to rulings of the Supreme Court that items such as expert witness fees, travel expenses, etc., be explicitly included if intended to be covered

1  under an attorney's fee provision."); H.R. Rpt. No. 101-485(II)

2  at 140, reprinted in 1990 U.S.C.C.A.N. 303, 423 (Report of the

3  Committee on Education and Labor) ("Litigation expenses

4  include the costs of experts and the preparation of exhibits.").

5

6  *Lovell v. Chandler,* 303 F.3d 1039, 1058 (9th Cir. 2002). "The federal statute,

7  unlike the state statutes, explicitly provides for not only attorney's fees but

8  also litigation expenses and costs." *Saldana-Neily v. Taco Bell of Am., Inc.*,

9  2008 WL 793872, *3 (N.D. Cal. 2008).

10

11  ## V.   CONCLUSION

12  The plaintiff respectfully requests that his motion be granted and he be

13  awarded $39,783.15.

14

15  Dated: November 26, 2019        CENTER FOR DISABILITY ACCESS

16  By: _____/s/ Dennis Price_____

17  Dennis Price, Esq.
    Attorneys for Plaintiff

18

19

20

21

22

23

24

25

26

27

28